## MOSES BUFFUM *vs.* FRANCIS DEANE & others.

Several judgment creditors of the same debtor, after taking out executions, and seizing thereon a right, which they had attached, of redeeming mortgaged real estate, made an agreement in writing with their attorney, by which they authorized him to purchase the equity of redemption, " at a sum sufficient to satisfy all said executions, including costs of levy and interest on said judgments," to sell it and apply the net proceeds, after paying all expenses of defending and perfecting the title, " to the payment of the several judgments, in the order of the attachments," and if the net proceeds should exceed the amount of such judgments and expenses, to divide the balance ratably among said creditors. *Held,* that the holder of the first judgment named was not entitled to interest thereon as against the others.

A conveyance in fee of real estate by lessor to lessee does not merge or extinguish the lease, as against an attachment made while it was in force between the parties.

Where real estate leased is attached by a creditor of the lessor, and sold on execution, the lessee has no right to set off, against the purchaser's claim for rent, a debt contracted by the lessor to the lessee since the attachment.

An action for rent reserved by deed is not barred in less than twenty years, notwithstanding the limitation of six years, prescribed by the Rev. Sts. c. 120, § 1, for " all actions for arrears of rent."

Where mills and the machinery therein are leased for an entire rent, and so much thereof as is real estate is afterwards sold on execution against the lessor, the lessee is liable to the purchaser for only a proportional part of the rent, if the machinery be personal estate.

BILL IN EQUITY, filed on the 29th of March 1853, for an account of the proceeds of real estate taken by the defendant Deane, an attorney, in trust under an agreement with certain of his clients who, in seven different actions against Henry S. Mansfield, had successively attached the estate, which was an equity of redemption, in the order specified in the agreement, and recovered judgments, and within thirty days afterwards placed the executions issued thereon in the hands of a deputy sheriff, to be levied on said estate; on which executions the estate had been seized by the sheriff, and advertised for sale.

By that agreement, the owners of those judgments authorize Deane " to bid off at said sheriff's sale, and purchase all said right in equity to redeem, at a sum sufficient to satisfy all said executions, including costs of levy and interest on said judgments; and to receive from the officer a deed of conveyance of the premises to himself, in special trust, however, for the use and benefit of the said creditors above named, and for the purposes

aforesaid;" and "to sell and convey said estate, or the interest he shall acquire by virtue hereof, as soon as he shall be able to effect a sale thereof to the best advantage of the creditors and all concerned herein; and after the payment of all necessary and proper charges and expenses that have or may arise in or about said suits or the execution of this trust, the said Deane shall apply the net proceeds of such sales and collections to the payment of the several judgments, in the order of the attachments, as specified above, so far as said net proceeds may reach; and if such net proceeds and collections shall exceed the amount of such judgments and expenses, the balance shall be paid to said creditors, *pro rata.*" And they "authorize said Deane, on the receipt of said deed of said right to redeem, in case he shall purchase the same for the sum above named, to receipt to the officer and acknowledge satisfaction of their several executions against said Mansfield;" and "further authorize and empower said Deane, in case he shall purchase said estate as aforesaid, to defend the title of said estate against any claim or claims he shall think unjust, and do all acts and things in relation to the defence of the title and the perfection of the title to said estate, that he shall think most for the interest of said creditors, and the expenses thereof shall be a proper charge against the estate in his hands; and in case the right to redeem, so purchased by said Deane, shall be redeemed by said Mansfield, or any person claiming under him, then the money so paid to said Deane shall be by him applied to the payments of said several judgments, in the manner and order above specified."

Deane, pursuant to this agreement, purchased and took a conveyance of the equity of redemption, and indorsed on the executions receipts of the amount thereof, and they were returned satisfied. Deane sold the estate before this bill was filed, and the proceeds in his hands are more than sufficient to pay the first judgment mentioned in the agreement, with interest thereon; but are not sufficient to pay all the judgments, with or without interest. The plaintiff is the holder by assignment of the first, third and fourth judgments, and the other defendants are the owners of the other four judgments.

The parties submitted to the decision of the court, upon the foregoing facts, the question whether the plaintiff was entitled to be paid his claims in full with interest thereon, before any thing is paid on claims standing after his.

*P. C. Bacon*, for the plaintiff. Without any special agreement, the common law, as well as the statute of Massachusetts, gives interest on a judgment, as a part of the debt. 2 Doug. 753, *note.* 2 Dane Ab. 212–217. *Fay* v. *Bradley*, 1 Pick. 194. *Klock* v. *Robinson*, 22 Wend. 157. Sedgwick on Damages, (2d ed.) 389. *St.* 1847, *c.* 153. A promise to pay a "judgment" includes interest. *Laidley* v. *Merrifield*, 7 Leigh, 346. This agreement does not vary the rights of the parties as to the amount or order of payment; but expressly allows the payment of a price equal to the whole amount of the judgments, including interest, and provides for their payment in full in their order. The delay in payment of the judgments was for the benefit of the subsequent creditors only, and should not diminish the amount to which the plaintiff is entitled. If Deane is to be regarded as trustee of the plaintiff, he holds the estate and its proceeds in trust to pay his judgment and interest. *Bryant* v. *Russell*, 23 Pick. 532. *Cobb* v. *Thompson*, 1 A. K. Marsh. 507.

*C. Allen & D. Foster*, for the defendants, to the point that interest is never allowed, unless by agreement of parties, or where there is a delinquency on the part of him who is to be charged, cited *Hunt* v. *Nevers*, 15 Pick. 500; *Haven* v. *Foster*, 9 Pick. 112; *Hubbard* v. *Charlestown Branch Railroad*, 11 Met. 124.

METCALF, J.* No authority to which we were referred in the argument of this case affords us any assistance in deciding it. The decision depends entirely upon the legal effect of the express agreement of the several judgment creditors of Mansfield, which was made with reference to the special facts therein recited. By that agreement, they authorized Deane to purchase Mansfield's equity of redemption, at the price of the aggregate amount of their judgments against him, including costs of levy

---

* THOMAS, J. did not sit in this case.

and interest up to the time of such purchase; to take a deed of the premises in his own name, in trust for them, and to sell the same, as soon as he should be able, to their best advantage, and to apply the net proceeds of the sale, so far as they would reach, to the payment of said judgments, in the order in which said creditors had made their attachments. In pursuance of this authority, and in execution of this trust, Deane purchased the equity at the agreed price, took a deed thereof in his own name, and sold the premises for the benefit of said attaching creditors. The net proceeds are more than sufficient to pay the judgment rendered in the suit on which the first attachment was made, (which judgment has been assigned to the plaintiff,) even if interest is computed on it from the date of the aforesaid agreement of the creditors; but those proceeds are not sufficient to pay all the judgments, whether interest be computed on them or not.

Upon these facts, the question is, whether the plaintiff is entitled to receive interest, since said agreement, on the judgment in the suit on which the first attachment was made, and thus reduce, to the amount of that interest, the sum which the succeeding attaching creditors shall receive of Deane, from the net proceeds of the sale which are in his hands.

The agreement, on which alone, as we have already said, this question turns, is silent as to the matter of interest on the judgments after the purchase of the equity of redemption, although it expressly stipulated that interest, up to the time of that purchase, should constitute a part of the sum which Deane might bid for that equity. The several judgments, with interest thereon to a certain day, were made a common fund, and were invested in real estate, which was to be sold for the benefit of all, and the proceeds applied in the manner expressly agreed on. In the absence of any provision in that agreement respecting future interest, the law raises no promise and imposes no duty respecting it. This is not a question between debtor and creditor, nor between trustee and *cestui que trust*, but between different judgment creditors of the same failing debtor; and it arises on a special agreement which they made between themselves, and

which was the foundation of the proceedings which they adopted for the satisfaction of their several executions against that debtor.

It may be that the matter of future interest never occurred to the minds of the parties to the agreement in question. Or it may be, that as they had provided that Deane should, as soon as he might be able, sell the estate, subject to the mortgage thereon, and divide the proceeds, there would probably be no income from the estate while in Deane's hands, and therefore that there was no just reason for swelling their claims by adding interest to demands of which they could hardly expect the principal would be paid in full. Or it may be that the creditors who had the first claims waived their right to interest, in consideration of the subsequent stipulation that the expenses of defending and perfecting the title should be a charge upon the fund, which, in case of deficiency, would affect those whose claims were the latest in order. However this may have been, it is sufficient for the decision of the case that the parties to that agreement made no provision as to subsequent interest on their judgments, and therefore the plaintiff, as against the other parties to the agreement, is not by law entitled to it. The master will state an account accordingly.

At the hearing before the master, Deane claimed the right to set off, against the sum due to the plaintiff, the rent of the premises held by Deane in trust, from the 9th of August 1847, the day of the conveyance to Deane from the deputy sheriff, to the 1st of January 1849, during all which time the plaintiff was in possession of the premises, with notice of that conveyance, and of Deane's intention to claim rent of him under a sealed indenture of lease, whereby Mansfield, on the 1st of January 1844, demised to the plaintiff, for the term of five years, at an entire yearly rent of $1,200, certain mills and the machinery therein. These mills were the estate held by Deane. The machinery was the ordinary machinery of a satinet mill, propelled by water power, and connected with the water wheel by bands and gearing in the usual way. On the 29th of June 1844, Mansfield, who then

33 *

owned both mills and machinery, mortgaged both to Richmond Bullock; and, twenty days after the making of the attachments before mentioned, namely, on the 22d of May 1846, conveyed his interest in both to the plaintiff, with covenants against incumbrances, and to remove existing attachments, on condition that the plaintiff should discharge the mortgage to Bullock, then amounting to about $6,000; and on the same day, in order to secure an unliquidated demand of the plaintiff upon him, gave the plaintiff a note for $5,000, and a mortgage on other property, from which the plaintiff never received any benefit. The judgments now held by the plaintiff were assigned to him since the expiration of the lease.

At September term 1856, the parties submitted the question of the right of Deane to claim said rent of the plaintiff to the decision of the court upon these facts, and those stated at the former hearing; the plaintiff agreeing that if Deane was entitled, at the time of the hearing before the master, to recover or set off, in any form of action at law or equity, any rent for the premises under the lease during the time for which it was claimed, it might be retained by way of set-off in this suit; but not waiving the benefit of the statute of limitations, or any other legal objection arising upon the facts agreed.

*P. C. Bacon*, for the plaintiff. 1. The lease may well be held to have been merged and extinguished, notwithstanding the attachments, by the deed of release from the lessor to the plaintiff on the 22d of May 1846, such being the intention of the parties. 1 Cruise Dig. (Greenl. ed.) tit. 8, *c.* 2, § 37 *& note.*

2. But if the lease was not so merged, and the rents released or discharged, still, as the intent of the parties clearly was to put an end to the lease, and to exonerate the plaintiff from further payment of rent, this intent should be carried out, so far as it legally may be, by applying the $5,000 due from Mansfield to the plaintiff to the payment of the rent in advance, if the lease still subsisted; and if not, it should be made available to the plaintiff, in equity, by way of set-off. *Stone* v. *Patterson,* 19 Pick. 476. *Howland* v. *Coffin,* 9 Pick. 52. *Frost* v. *Spaulding,* 19 Pick. 446.

3. The claim for rent is barred by the statute of limitations, no action having been brought upon it within six years from the time the rent accrued ; for this is not only an action on a con-tract under seal, which must be brought within twenty years; but an action for arrears of rent, which must be brought within six ; and the shortest of the two periods of limitation bars the action.    Rev. Sts. *c.* 120, §§ 1, 7.    *Sibley* v. *Estabrook, ante,* 295.

4. The provision of Rev. Sts. *ç.* 120, § 19, as to the time of computing the limitation of a claim in set-off, is confined to ac-tions at law.    The statutes of set-off do not apply to this case, even by analogy, this claim for rent being a demand entirely dis-tinct from the equitable claim now held by the plaintiff, which was not purchased by him until after his liability for the rent had accrued.    And equity will not allow the set-off of distinct and independent demands ; nor even of mutual demands, unless where there is a mutual credit, or an agreement, express or implied, for a set-off, which is not the case here.    2 Story on Eq. §§ 1433–1436.    *Dade* v. *Irwin,* 2 How. 383.    *Gordon* v. *Lewis,* 2 Sumner, 628.    *Gaylord* v. *Couch,* 5 Day, 223.

5. The plaintiff, if liable for any rent, is liable only for the value of the real estate without the machinery.    The machinery was personal property, and therefore did not pass to Deane by the sheriff's deed.    *Winslow* v. *Merchants' Ins. Co.* 4 Met. 306. *Gale* v. *Ward,* 14 Mass. 352.    2 Kent Com. (6th ed.) 343. 1 Cruise Dig. (Greenl. ed.) tit. 1, § 7 *& note.*    The rent must therefore be apportioned, and that part which would have been due for the personalty deducted.    *Doubitofte* v. *Curteene,* Cro. Jac. 452.    *Dean & Chapter of Windsor* v. *Gover,* 2 Saund. 303. *Salmon* v. *Matthews,* 8 M. & W. 827.

*C. Allen & D. Foster,* for Deane.    1. The release from Mans-field to the plaintiff, pending the attachments, could not merge or extinguish the lease, to the prejudice of the rights of attach-ing creditors.    Rev. Sts. *c.* 90, § 23.    *Montague* v. *Gay,* 17 Mass. 439    *Burden* v. *Thayer,* 3 Met. 76.

2. To allow the plaintiff to apply the $5,000 in payment or set-off of the rent would equally contravene the rights of the attaching creditors; and would also be contrary to the intent of

the parties, for the facts show that it was paid towards the purchase of the estate without any reference to rent, and indeed contemplating the cessation of the rent, by making the plaintiff absolute owner of the estate, and was accompanied by other security.

3. The demand for rent under a sealed lease is not barred in less than twenty years. Rev. Sts. *c.* 120, §§ 1, 7. This rent therefore might still be recovered by action, and may, by the express agreement of the parties, be deducted or set off in this suit.

4. The claim for rent is strictly matter of set-off under the statute, because a liquidated demand. Rev. Sts. *c.* 96, § 3. And the period of limitation is to be computed to the time of the filing of the bill, and not of the hearing. Rev. Sts. *c.* 96, § 20 ; *c.* 120, § 19. Especially in equity, there is a peculiar propriety in setting off connected debts which arise out of the same transaction ; and this trustee will not be compelled to pay over without making all just deductions. 2 Story on Eq. §§ 1430, 1431. *O' Connor* v. *Spaight*, 1 Sch. & Lef. 305. *Greene* v. *Darling*, 5 Mason, 211.

5. The rent is not to be apportioned, but the plaintiff is liable for the entire rent reserved in the lease. The machinery, under the circumstances, is real estate. *Fitchburg Cotton Manuf. Co.* v. *Melven*, 15 Mass. 270. *Winslow* v. *Merchants' Ins. Co.* 4 Met. 306. And the facts show that it was so treated by the parties. See also *Buffum* v. *Deane*, 8 Cush. 41. But even if personal property, being included in the same lease with the mills, in which it is, and with which it is used, the rent issues from the land alone. *Spencer's case*, 5 Co. 17. *Collins* v. *Harding*, Cro. Eliz. 606. *Emott* v. *Cole*, Cro. Eliz. 255, and Dyer, 212 *b*, *note*. 15 Mass. (Rand's ed.) 270, *note*. *Newman* v. *Anderton*, 2 New Rep. 227. *Farewell* v. *Dickenson*, 6 B. & C. 251.

The decision was made in June 1857.

Metcalf, J. Deane now claims to set off, against the demand of the plaintiff, the amount of the rent reserved in Mansfield's lease to the plaintiff, and which has accrued (but has not been paid to any one) since the attachment by Mansfield's cred-

itors, and until the 1st of January 1849, when the lease termi-nated. The plaintiff resists this claim on several grounds.

1. One ground taken by the plaintiff is, that Mansfield's con-veyance to him, on the 22d of May 1846, merged or extinguished the lease. But however this might have been, if no rights of other persons had intervened, it cannot be so upon the facts of this case. Mansfield's right in equity to redeem from Bullock had been attached by his creditors twenty days before he con-veyed it to the plaintiff, and was afterwards sold to the defend-ant on execution. The conveyance of it to the plaintiff, after the attachment, was therefore of no legal effect. *Burden* v. *Thayer,* 3 Met. 76. Bullock, the mortgagee, had a legal right to the rent; but as it does not appear that he ever claimed it, the defendant, by becoming assignee of the reversion, as against everybody but Bullock, became entitled to it. Chambers on Leases, 148–152. *Patten* v *Deshon,* 1 Gray, 326, 327.

2. The plaintiff claims a right to apply the rent towards pay-ment of the note for $5,000, which he received of Mansfield on the 22d of May 1846. But as rent is incident to the reversion, and the defendant's right to the reversion was obtained by an attachment thereof before that note was given, followed by a sale on execution, this claim of the plaintiff cannot prevail. Indeed, neither of these first two points was much pressed in argument.

3. The plaintiff relies on the statute of limitations as a bar to the defendant's claim for rent; the provision of the Rev. Sts. *c.* 120, § 1, being that " all actions for arrears of rent" shall be commenced within six years next after the cause of action shall accrue, and not afterwards. But we are of opinion that this limitation does not apply to an action for rent reserved in a sealed lease, but only to actions founded on contracts not under seal. The construction given to the English *St.* 21 Jac. I. *c.* 16, which required that " all actions of debt for arrears of rent" should be commenced within six years, always was, that it did not apply to actions for rent reserved by deed. *Freeman* v. *Stacy,* Hut. 109. 2 Saund. 66, *note* (8.) Angell on Lim. (3d ed.) § 87. And by our Rev. Sts. *c.* 96, § 20, the same law of

limitation is to be applied to a claim made in set-off, as would apply to an action on the same claim. An action on a sealed contract is not barred, by our statute of limitations, under twenty years.

4. The plaintiff contends that, if he is answerable at all to the defendant for rent, it is not for the whole $1,200 a year, which was reserved in the lease; that sum being rent for both real and personal property, and the defendant not having obtained any right to the personal property, to wit, the machinery in·the mills. He therefore claims a deduction, from the $1,200, of such sum as the use of the machinery was worth. And we are of opinion that this claim is well founded, if any of the mortgaged machinery was personal property. The defendant, under the sale to him of Mansfield's equity of redemption, did not acquire any interest in the personal property mortgaged to Bullock, but only in the real. The case therefore comes within the principle that rent is to be apportioned when the reversion is severed. 3 Kent Com. (6th ed.) 469 *& seq.* Bac. Ab. Rent, M. And we cannot doubt but that, after the sale to the defendant of the right in equity to redeem the real property, the plaintiff was left liable to an action, by the lessor or his assignee, to recover a reasonable and proportional compensation for the use of the personalty. The case of *Salmon* v. *Matthews*, 8 M. & W. 827, is decisive of this point, and of the plaintiff's right to the deduction which he claims.

The master will ascertain what machinery was mortgaged, if any, which was not a part of the real estate, and what sum is a reasonable and proportional compensation for the use of it; will deduct that sum from the $1,200 yearly rent; and will adjust the account between the parties accordingly.