JANE DADE, COMPLAINANT, *v.* THOMAS IRWIN, JUN., EXECUTOR OF THOMAS IRWIN, DECEASED, AND WILLIAM L. HODGSON, DEFENDANTS.

A court of equity will not interfere, where the complainant has a proper remedy at law, or where the complainant claims a set-off of a debt arising under a distinct transaction, unless there is some peculiar equity calling for relief.

Nor will it interfere where the set-off claimed is old and stale, with regard to which the complainant has observed a long silence, and where the correctness of the set-off is a matter of grave doubt.

THIS was an appeal from the Circuit Court of the United States for the District of Columbia, in and for the county of Alexandria, sitting as a court of equity.

The case was this.

In the years 1824 and 1828 Jane Dade executed two deeds of trust to one William Herbert, for the purpose of securing a debt which she owed to Thomas Irwin, the deceased.

In 1830, Thomas Irwin, junior, the executor of Thomas Irwin, (who had died in the mean time,) filed a bill against Jane Dade for the sale of the property. Herbert, the trustee, was alleged to be a iunatic, and the bill therefore prayed that a commissioner might be appointed to make the sale.

Jane Dade in her answer admitted the justice of the claim as stated in the bill. A decree was entered in conformity with the bill, and William L. Hodgson appointed commissioner to carry the same into effect.

On the 21st of November, 1834, Jane Dade filed another bill on the equity side of the court, stating that the sale was to take place in a few days, and praying that it might be suspended. She alleged that she was entitled to a credit under the following circumstances: that in 1817 she had loaned to one James Irwin $680; that in 1821,

he executed his promissory note to her for $826 63, which was the amount of the above sum with interest; that, to secure the payment of the note, he assigned a debt due to him from Henderson and Company, which debt was guarantied by Thomas Irwin, who had become liable for the same; and that the amount of this debt, with interest, should be deducted from the sum for which Thomas Irwin's executor was about to sell her property. The bill further alleged that Thomas Irwin, the deceased, had become personally liable from having sold some cordage to Henderson and Company, contrary to his instructions. The assignment of the debt from James Irwin to Jane Dade, (through her agent, John Adam,) and the admission of a personal liability by Thomas Irwin, were alleged to be in the following terms:—

I do hereby assign to John Adam, the debt due me by Alexander Henderson for cordage sold him by Thomas Irwin, as my agent, for which debt said Irwin is himself liable, having received said Henderson's note without my consent. This assignment is made to secure to Jane Dade the payment of six hundred and eighty dollars, with interest thereon from the 16th of October, one thousand eight hundred and seventeen, money borrowed from her by said Adam for my use, for which I have given him my note, payable in eighteen months, with interest.

Given under my hand and seal, this 20th day of May, one thousand eight hundred and twenty-one.

JAMES IRWIN. [Seal.]

(Endorsed)          JOHN ADAM.

Test: LEWIS COLE.

Endorsed. If the within debt cannot be recovered from Alexander Henderson, I am liable for the same: provided full time be allowed for the prosecution of the suit.          THOMAS IRWIN.

The bill further alleged that full time had been allowed for the prosecution of the suit against Henderson, and that there was no prospect of any thing being recovered.

Upon filing this bill, an injunction was granted to stay the sale.

In February, 1835, Thomas Irwin, Jun., the executor, filed his answer, denying all knowledge of the note said to have been given by James Irwin, and denying the assignment above recited. The answer admitted that Thomas Irwin had sold some cordage to Henderson and Company, for which he had taken their note; that the

Dade v. Irwin's Executor.

note had been put in suit, judgment rendered upon it, and execution issued; that Henderson was discharged under the insolvent act; that the recovery of the money due on the said note being considered as desperate, his testator had charged the amount to his principals, James Irwin and Company. The answer denied altogether the signature of Thomas Irwin, guarantying the debt; and alleged sundry other matters to show the absence of equity in the claim of the complainant.

In November, 1835, the court refused to dissolve the injunction, and suggested that an issue should be made up, to be tried at the bar of the court sitting as a court of law, to try the question of the genuineness of the signature of Thomas Irwin.

This was done, but the jury were not able to agree, and were discharged.

Numerous depositions were then taken and filed, and the case came on to be heard, when the court decreed that the injunction should be dissolved and the bill dismissed with costs.

The complainant, Jane Dade, prayed an appeal to this court.

*Neale* (in a printed argument) and *Brent*, for the appellant.
*Jones*, for the defendant in error.

*Neale*, for the appellant:

This cause which comes up by appeal from the Circuit Court of Alexandria county, was upon the final hearing in the court aforesaid, dismissed by a majority of the court, for the following reasons:

1. Because, in the opinion of a majority of the court, the court had not jurisdiction of the case sitting as a Court of Chancery.

2. Because, there was no consideration from which the defendant's testator could be made liable, either on account of the assumpsit in writing endorsed on exhibit B, or for blending his principal's goods with his own—taking a note therefor, and sueing and obtaining a judgment thereon in his own name for the two amounts so blended, as the record proves.

3. Because, the complainant [now appellant] forbore to press this claim sooner, by way of set-off to the claim of the defendant's testator. For these reasons a majority of the court dismissed the bill at the complainant's cost. Dissentient—his honour the chief judge.

These objections, coming as they do from the very fountain of justice, are justly entitled to high respect and grave consideration. But however high and pure the source from whence they proceed, still it is an open question whether or not they are sustained by the

facts of the case—the principles of equity jurisdiction, and the legal liabilities of an agent to his principal. According to the regular order of pleading, the first inquiry to be instituted is as to the jurisdiction of the court, and upon that point we cite and rely upon the following authorities and accompanying remarks, to wit:

Johns. Digest, 102; 1 Wash. Rep. 145; Barbour and Harrington's Digest, 2, 4, 6, 11, 13, 15, 31, 46; 5 Term Rep. 603; 4 Bing. 459; 1 P. Wms. 325, 326; 2 P. Wms. 128; 4 P. Wms. 611; 5 Peters, 278; 2 Robinson's Practice, 1, 4; Tucker's Commentary, b. 3, p. 404; 1 Story's Equity, 82, and 442—446, sects. 462, 463, 464. In the case of Grandin and Leroy, 2 Paige, 509, it is said, "that after a defendant has answered a bill in chancery, and submitted himself to the jurisdiction of the court without objection, it is too late to insist that complainant has a perfect remedy at law; unless the court is wholly incompetent, [as a Court of Chancery,] to grant the relief sought by the bill."

Again it is said, "that whenever the remedy at law is doubtful or difficult, a Court of Chancery has jurisdiction." American Insurance Company v. Fisk, 1 Paige, 90; Teague and Russell, 2 Stew. Rep. 420.

In the case of Ward v. Arredando, Hopkins, 203, the court say, "the principle is that the jurisdiction may be upheld whenever the parties, or the subject, or such portion of the subject as is within the jurisdiction, are such that an effectual decree can be made and enforced so as to do justice."

[Mr. *Neale* then entered at great length upon the consideration of the other two points. His argument is omitted, because the decision of the court was placed upon other grounds.]

*Jones*, for the defendant in error:

This case might appear, at the first blush, somewhat extraordinary, as being a bill of injunction and an original bill to stay the regular execution of a decree in equity, and to obtain relief against it four years after it had been obtained by the now defendant, Irwin, against the complainant, Jane Dade, with her full and unqualified consent for the sale of real property to pay a debt which she had collaterally secured by a conveyance of the same property in trust, for the specific purpose of being sold to raise the money for the payment of such debt, if not paid in a given time. It may not, perhaps, seem less extraordinary that, as an original bill it seeks not to set aside the decree for fraud, and that it is not, in any sense or shape, or in any

aspect whatever, a bill of review; that no error either of law or fact on the face of the decree, or in any part of the procedure, nor any new matter discovered since the decree, is at all within the scope or object of the bill: but on the contrary, it is admitted that the debt remains precisely as when the decree was obtained, except a small payment since on account of the interest, and about which there is not, nor ever was, the slightest dispute or difference between the parties; and that the decree stands wholly unexceptionable in itself, and in every part of the procedure, precedent and subsequent. The whole scope and object of the bill is to get the benefit of a pretended set-off, not discovered since the decree, but just as well known to the complainant before the decree, and in fact for many years before the commencement of the suit in which the decree was rendered, as at the present time. The pretended set-off consisted of a stale demand of more than thirty years standing, wholly unconnected with any transaction involved in that suit. The complainant had no original interest or concern in it. The only interest claimed by her in it was from a pretended assignment of it by a third person made seventeen years after the demand had accrued, more than nine years before the decree, and more than thirteen years before it was for the very first time brought out and asserted in this bill of injunction. The demand itself consisted in a liability pretended to have been incurred so long ago as 1804, by the now defendant's testator, Thomas Irwin, for misconduct as agent of one James Irwin, (from whom complainant derives her claim as assignee of the cause of action,) in having unduly indulged a debtor to whom he sold goods intrusted with him by James Irwin to sell on commission; and for which misconduct, if satisfactorily made out, James Irwin might have recovered damages in a special action on the case: a cause of action, therefore, purely and strictly legal in its nature. The only misconduct imputed to the agent is that of having taken a negotiable note, at 60 days, of the mercantile firm to whom he had sold the goods. Complainant pretends that seventeen years after this transaction, when the assignment was made, Thomas Irwin endorsed on the assignment a conditional acknowledgment of his liability, if the debt cannot be recovered of the principal debtor, provided a reasonable time be allowed for the prosecution of the suit.

Now, supposing the complete establishment of this set-off in every point of law and fact; setting aside all consideration of the extraordinary length of time it had been kept back in silence and inaction;

and waiving all objection to equity jurisdiction of a demand so exclusively legal; and in fact *strictissimi juris,* in its nature; the appellee might be content to rely solely upon the well-known principles and rules of equity law and practice, which establish—first, that a final decree enrolled (or what, with us, is equivalent to enrolment in England, after the term at which the decree was rendered has passed over,) it cannot be set aside, nor can any relief whatever be obtained against it, by any sort of original bill, unless fraud in the decree be distinctly and circumstantially charged. Secondly, that even in the case of a bill of review, either demonstrative error in matter of law must be shown on the face of the decree, or the fresh discovery of new matter since the decree; the materiality of which, and the positive inability of the complainant to have come at a previous knowledge of it by using reasonable and active diligence, must all be clearly shown by affidavit. Thirdly, that after a case for a bill of review has been thus made out, it cannot be filed without the special leave of the court; one of the ordinary and standing conditions of which leave is, that the decree shall first be performed. So utterly foreign to all received notions of equity law or practice is a bill of injunction to stay the execution of a decree, and so utterly inadmissible is any sort of relief by means of one decree in equity against another decree in equity, but for one or other of the special causes, and in one or other of the special modes of procedure aforesaid.

Where there is newly discovered evidence it must be shown to be material and relevant, and to have been out of the power of the party to have produced before. Mitford on Pleading, 4 ed. pp. 84, 85; 16 Vesey, 354; 2 Ball and Beatty, 462; Ambler, 295; 5 Russell, 195, where the cases are all examined.

No bill of review can be filed until the decree is performed.

In this case the ground of the bill is deserted. The court had no right to go back to an original claim in equity; and the claim is too stale and doubtful in its nature to be admitted. 1 Howard, 108.

[Mr. *Jones* was proceeding in his argument, when the court expressed a desire to hear the counsel on the other side.]

*Brent,* in reply and conclusion.

This is not merely a bill for an injunction, but also for a discovery as to the time of the origin of the set-off. The suit against Henderson was prosecuted until 1835, and the complainant did not think she had a right to file an original bill until the suit was decided.

Dade *v.* Irwin's Executor.

Mr. Justice STORY delivered the opinion of the court.

This is an appeal from the Circuit Court of the District of Columbia, sitting in Alexandria.

In the year 1824, the appellant, Jane Dade, became indebted to Thomas Irwin, the testator, and executed two deeds of trust for the security of the debt. At the November term of the Circuit Court of Alexandria county, 1830, Irwin, the executor, filed his bill to obtain a decree of the sale of the estate so conveyed in trust; and a decree was made without objection for the sale, the appellant admitting the justice of the claim; and the original trustee having become insane, William L. Hodgson was appointed trustee to make the sale. After sundry delays, the trustee advertised the estate for sale on the 28th of November, 1834; and on the day preceding the intended sale the present bill was filed by the appellant for an injunction against the sale. The bill made no objection to the original debt or decree, but simply set up a claim, by way of set-off or discount, of a totally distinct nature, and unconnected with the original debt, as due by the testator to her, and for which she alleged in her bill that she ought to receive a credit, to which in equity and strict justice she was entitled. The claim thus set up had its origin in this manner. In May, 1821, James Irwin gave his note for $826 63 to John Adam or order, for Mrs. Dade, for money borrowed of her, which note was endorsed by Adam, and on the same day James Irwin, as collateral security therefor, assigned to Adam a debt due to him by Alexander Henderson for cordage sold him by Thomas Irwin (the testator) as his agent, and for which the assignment alleged Thomas Irwin was liable, having received Henderson's note without the consent of James Irwin. Upon the back of this assignment there now purports to be the following endorsement, "If the within debt cannot be recovered from Alexander Henderson, I am liable for the same, provided full time be allowed for the prosecution of the suit." The supposed note referred to in the assignment was, dated in January, 1804, and was for the payment of $901 83 to the order of Thomas Irwin; and was signed by Alexander Henderson and Co. This note the bill alleged to include the debt due to James Irwin. Judgment was obtained upon this note in 1805. Afterwards Henderson, in 1806, became insolvent, and in 1816 a bill in equity was filed for the satisfaction of the judgment out of supposed effects in the hands of certain garnishees, which suit was not finally disposed of until October, 1835, and was then abated by Henderson's death.

2 K 2

The answer to the present bill by Thomas Irwin, the executor, denied the whole equity thereof. It denied that James Irwin ever executed the supposed assignment. But he admitted the origin of the debt due by Henderson and Co.; and that the note taken by the testator included it; but that Henderson having become insolvent he was not liable for that amount, and charged it in his accounts against James Irwin and Co. He also denied the supposed endorsement on the assignment to be genuine, but alleged the same to be a sheer fabrication.

The injunction prayed for by the bill was granted, and afterwards the court directed an issue to be tried by a jury to ascertain whether the testator's signature to the endorsement was genuine or not. That issue was tried by a jury, who were unable to agree upon a verdict. The order for an issue was then rescinded, and the cause came on for a final hearing in 1839, when the bill was dismissed with costs. There is a great deal of evidence on both sides as to the genuineness of the signature of the testator, and also as to the appearance of the ink of the endorsement being that of recent writing. It is also remarkable that in the long interval between the time when the deed of trust was given in 1824, and the time when the sale was advertised and the bill filed, no demand was ever suggested by or on behalf of Mrs. Dade for the present supposed debt due her as a set-off or otherwise. On the contrary, although repeated and earnest applications were made for delay of the sale, from the time of the decree in 1830 until the advertisement in 1834; and some correspondence took place on the subject, no allusion whatsoever was made to any such supposed claim or set-off; but an entire silence existed on the subject. It is also somewhat singular, that when the bill upon the trust deed was filed and the decree therein obtained, no suggestion was made by Mrs. Dade in answer thereto of this supposed claim, nor any postponement of the decree of sale asked upon this account.

Now, upon this posture of the case, several objections arise as to the maintenance of the suit. In the first place, the present bill is of an entirely novel character. It is not a bill of review, or in the nature of a bill of review, founded upon any mistake of facts, or the discovery of any new evidence. It admits in the most unambiguous terms that the decree was right. Then, it sets up merely a cross-claim or set-off of a debt arising under wholly independent and unconnected transactions. Now it is clear that courts of equity do not act upon the subject of set-off in respect to distinct and uncon-

Dade *v.* Irwin's Executor.

connected debts, unless some other peculiar equity has intervened, calling for relief; as, for example, in cases where there has been a mutual credit given by each upon the footing of the debt of the other, so that a just presumption arises that the one is understood by the parties to go in liquidation or set-off of the other.(*a*) In the next place, the remedy for Mrs. Dade, if any such debt as she has alleged exists, is at law against the executor; and there is no suggestion that the estate of the testator is insolvent, and that his assets cannot be reached at law. So that the bill steers aside of the assertion of any equity upon the foundation of which it can rest for its support.

In the next place, the nature and character of the claim itself, now for the first time made, long after the decease of both the Irwins, and thirteen years at least after its supposed origin. To put the case in the least unfavourable light, it is a matter of grave doubt whether the endorsement of the testator's name on the assignment is genuine or not. That very doubt would be sufficient to justify this court in affirming the decree of the court below, and leaving Mrs. Dade to her remedy at law, if any she have. But connecting this with such a protracted silence for thirteen years, without presenting or making any application for the recognition or allowance of the claim to the testator or his executor, it is impossible not to feel that the merits of the claim at such a distance of time can scarcely be made out in favour of the appellant. It is stale, and clouded with presumptions unfavourable to its original foundation, or present validity. Besides, in cases of this sort, in the examination and weighing of matters of fact, a court of equity performs the like functions as a jury; and we should not incline, as an appellate court, to review the decision to which the court below arrived, unless under circumstances of a peculiar and urgent nature.

The decree of the Circuit Court is, therefore, affirmed with costs.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria, and was argued by counsel. On consideration whereof, It is now here ordered and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby affirmed with costs.

(*a*) See 2 Story Eq. Jurisp. §§ 1435, 1436.