LOWDEN ET AL., TRUSTEES, *v.* NORTHWESTERN
NATIONAL BANK & TRUST CO.

No. 743. Argued April 3, 1936.—Decided April 27, 1936.

*Messrs. Edward S. Stringer* and *Marcus L. Bell,* with
whom *Messrs. Alexander E. Horn, Daniel Taylor,* and
*Otis F. Glenn* were on the brief, for Lowden et al.,
Trustees.

*Mr. Claude G. Krause* for Northwestern National Bank
& Trust Co.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

On June 7, 1933, the Chicago, Rock Island and Pacific Railway Company filed in the United States District Court for the Northern District of Illinois its petition for reorganization under § 77 of the Bankruptcy Act. 11 U. S. C. § 205.* At that time the railroad had to its credit the sum of $36,908.72 in a checking account with the Northwestern National Bank and Trust Company of Minneapolis. The bank was then the owner of First and Refunding Gold Bonds issued by the railroad of the par value of $100,000, not yet in default in respect of principal or interest. On June 19, 1933, seven days after receiving a copy of an order approving the petition for reorganization, the bank set off the deposit against the bonds by appropriate entries upon its books of account. Trustees of the estate of the railroad were appointed by the court in accordance with the statute, though whether before the attempted set-off or thereafter the record does not tell us. They brought suit against the bank in the United States District Court for Minnesota, not the court of bankruptcy administration, to recover the amount of the deposit set off against the bonds. After answer by the bank and a trial of the issues, the court entered a decree upholding the validity of the set-off, with a correction not now material as to the amount of the deposit. 11 F. Supp. 929. The trustees appealed to the Circuit Court of Appeals for the Eighth Circuit. That court, after certifying the facts substantially as summarized above, requested our instructions upon the following questions (Judicial Code, § 239; 28 U. S. C. § 346):

---

* The references in this opinion are to § 77 as enacted March 3, 1933, 47 Stat. 1474, and not to the amendments of August 27, 1935, 49 Stat. 911, 926.

"Question 1. Does the right of set-off recognized by section 68 (a) of the Bankruptcy Act apply to reorganization proceedings under section 77 of that act?

"Question 2. If the first question be answered in the affirmative, can a bank which owns the unmatured bonds of a railroad corporation set off a deposit account of the railroad with the bank against the bonds, upon the filing by the railroad of a petition for reorganization under section 77 of the Bankruptcy Act, alleging that the railroad is unable to meet its debts as they mature?

"Question 3. If the first and second questions be answered in the affirmative, may the United States District Court, for the District of Minnesota, in the suit by the trustees of the railroad's estate to recover the amount deducted from the account of the railroad by the bank under the claimed right of set-off, recognize and establish as a proper set-off by the bank one which was not made until after the filing of the petition for reorganization and which has never been ordered, authorized, approved, or consented to by the court in which that petition was filed and approved?"

This court has had occasion recently to restate the rules announced in earlier decisions as to the mode of formulating questions coming here upon certificates. *Mantle Lamp Co.* v. *Aluminum Products Co.*, 297 U. S. 638. We will not answer abstract questions unrelated to the pending controversy, or questions unnecessarily general, or questions which admit of one answer in one set of circumstances and a different answer in another, the differentiating circumstances being imperfectly disclosed. *White* v. *Johnson*, 282 U. S. 367, 371; *United States* v. *Mayer*, 235 U. S. 55, 66; *United States* v. *Hall*, 131 U. S. 50, 52; *Webster* v. *Cooper*, 10 How. 54, 55; *Hallowell* v. *United States*, 209 U. S. 101, 107; *General Motors Corp.* v. *United States*, 286 U. S. 49, 63. The questions now be-

fore us have been framed without adequate regard to these established rules of practice.

Question No. 1 is too general and abstract, its relation to the controversy being indirect and problematical. "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." Bankruptcy Act, § 68 (a); 11 U. S. C. § 108. The precept, framed on the example of ancient laws across the seas (4 Anne, c. 17, § 11; 5 Geo. II, c. 30, § 28), is now applicable by force of statute to the liquidation of estates in bankruptcy. We are asked to announce broadly whether it is applicable with similar inclusiveness to proceedings to reorganize a railroad, though the question tells us nothing as to the facts behind the controversy. "The court has repeatedly held that it will not answer questions of objectionable generality." *White* v. *Johnson, supra; United States* v. *Worley,* 281 U. S. 339, 340; *United States* v. *Mayer, supra.* Without a showing of the facts an answer to this question would declare a mere abstraction which might seem too narrow or too broad thereafter when the facts were shown forth. One must see the controversy in its setting before the implications of a ruling can be prefigured with assurance.

Question No. 2 is dependent by its terms upon an affirmative answer to question No. 1. It is open, however, to objections on its own account. Like question No. 1 it is far too general in its range. Moreover, it is silent as to facts which a court of equity should know before hazarding an answer. A proceeding to reorganize is not a bankruptcy, though an amendment to the bankruptcy act creates and regulates the remedy. From the fact without more that such a proceeding has been initiated, one cannot know that it will be necessary to have recourse to § 68,

which was meant in its enactment to prescribe the rule of set-off upon a distribution of the assets. That stage of administration, or the analogous stage of a revision of the debts, may never be attained in a proceeding to reorganize, though a petition has been approved and trustees have been appointed. If a plan of reorganization is not proposed or accepted, or, being proposed and accepted, is not confirmed by the court within a reasonable time, the whole proceeding may be dismissed, § 77 (c) (7), the title to the estate thus reverting to the debtor. By that time there may even be ability to pay demands as they mature. What is done at the beginning amounts to little more than a provisional sequestration to give protection for the future.

The right of set-off must fit itself to these procedural conditions. It is not susceptible of definition in the abstract without reference to the time or occasion of the controversy or the relation of the suit to the primary proceeding. Irrespective of the acceptance or confirmation of a plan, the trustees must have the power to gather in the assets and keep the business going. To exercise that power, they may find it necessary to sue, and the suit may turn upon the right of set-off, as it does in the case at hand. In a suit for such a purpose, a suit collateral to the main proceeding and initiated at a time when the outcome of that proceeding is still unknown and unknowable, § 68 of the statute does not control the disposition of the controversy *ex proprio vigore*. It governs, if at all, by indirection and analogy according to the circumstances. The rule to be accepted for the purpose of such a suit is that enforced by courts of equity, which differs from the rule in bankruptcy chiefly in its greater flexibility, the rule in bankruptcy being framed in adaptation to standardized conditions, and that in equity varying with the needs of the occasion, though remaining

constant, like the statute, in the absence of deflecting forces. *Scott* v. *Armstrong*, 146 U. S. 499, 507; *North Chicago Rolling Mill Co.* v. *St. Louis Ore & Steel Co.*, 152 U. S. 596, 615; *Scammon* v. *Kimball*, 92 U. S. 362, 366; *Sawyer* v. *Hoag*, 17 Wall. 610, 622; *Clark Bros. & Co.* v. *Pou*, 20 F. (2d) 74, 77, 78; *Greene* v. *Darling* (Story, J.), 5 Mason 201, 210; *Gray* v. *Rollo*, 18 Wall. 629, 632; *Dade* v. *Irwin's Executor*, 2 How. 383, 390, 391; *Studley* v. *Boylston National Bank*, 229 U. S. 523, 528, 529; *Pond* v. *Harwood*, 139 N. Y. 111, 119; 34 N. E. 768; *Frank* v. *Mercantile National Bank*, 182 N. Y. 264, 268; 74 N. E. 841; *Lockwood* v. *Beckwith*, 6 Mich. 168, 175; Story, Equity Jurisprudence, 14th ed., §§ 1871, 1872.

The defects of the certificate, its incomplete disclosure of the facts conditioning an answer, are thus exhibited in clear relief. "Insolvency" in proceedings to reorganize (§ 77) is often very different from "insolvency" in ordinary bankruptcy. § 1 (15). There is at least a possibility that at times the difference may be great enough to vary the resulting equities. When things are called by the same name it is easy for the mind to slide into an assumption that the verbal identity is accompanied in all its sequences by identity of meaning. A court of equity in allowing or rejecting set-off will not be guilty of that fallacy. To know "the justice of the particular case" (*Scott* v. *Armstrong, supra;* Story, Equity Jurisprudence, *supra*), one must know the case in its particulars. More concretely, one must know the value of the assets, the temporary or permanent character of the debtor's inability to pay its debts as they mature, the liens, if there are any, superior to the bonds in controversy, the probability of an understanding that the bonds, though unmatured, would be used to cancel the deposits, all the circumstances, in brief, that might affect the judgment of the chancellor in weighing the competing equities of the

interested factions and shaping his decree accordingly. We have no thought at this time to foreshadow the result of an exploring expedition directed to those ends. When all the facts are known, they may be found to offer no excuse for a departure from the rule in bankruptcy which, as indicated already, is generally, even if not always, the rule in equity as well. They may point, on the other hand, to the need for an exception, or may even lead to a decree in the nature of a compromise, the moneys being paid into the registry of the court to abide its future action. A decision balancing the equities must await the exposure of a concrete situation with all its qualifying incidents. What we disclaim at the moment is a willingness to put the law into a strait-jacket by subjecting it to a pronouncement of needless generality.

Question No. 3 is so framed as not to call for an answer unless an affirmative answer is given to questions Nos. 1 and 2.

Our conclusion as to the defective form of the certificate is borne out in a striking way by the concession of the parties. Before the argument on the questions, plaintiffs and defendant joined in moving us for an order to bring up the whole case. That motion was denied. Nothing in the nature of the controversy called for a writ of certiorari in advance of a decision by the court of intermediate appeal. The significant thing, however, is that in briefs submitted on that motion both parties admitted that the second question was defective. The plaintiffs said: the statement "is not sufficiently complete to enable this court to answer the second question as applied to this case." The defendant made a like objection. Plaintiffs and defendant fortified their general criticism by the enumeration of particular defects.

The certificate is

*Dismissed.*