In the Matter of Ben Hyman & Co., Inc., Bankrupt.

BEN HYMAN & CO., INC., Plaintiff,

v.

The FULTON NATIONAL BANK, Defendant.

No. B75–2822A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 25, 1976.

Levine, D'Alessio & Cohn, Karp & Karp, Atlanta, Ga., for Ben Hyman.

Alfred S. Lurey, Kilpatrick, Cody, McClatchey, Rogers & Regenstein, Atlanta, Ga., for Fulton Nat. Bank.

## ORDER OF COURT

MOYE, District Judge.

This is an appeal from the order of the bankruptcy court in this case entered on January 12, 1976, finding the defendant The Fulton National Bank (Bank) to be in contempt of court and directing the defendant to restore to plaintiff the sum of $27,993.72 offset from the plaintiff's checking accounts against indebtedness owed by plaintiff to defendant.

On August 11, 1975, Debtor filed its petition seeking an arrangement under Chapter XI of the Bankruptcy Act. At the time of the filing of the Chapter XI petition, Debtor was indebted to the Bank pursuant to two promissory notes in the amount of approximately $233,800.00. The Bank held a security interest in each of the notes in accordance with the terms of the notes. Also at the time of the filing of the Chapter XI petition, Debtor maintained three checking accounts with the Bank. Subsequent to the filing of the Chapter XI petition, on August 13, 1975, the Bank set off the balances in the Debtor's checking accounts against Debtor's indebtedness to the Bank.

After the set-offs the Bank agreed, under certain conditions, to restore Debtor's pay-

roll account and to restore all sums deposited subsequent to the filing of the Chapter XI petition; as to deposits made prior to the filing of the Chapter XI petition, the Bank refused. Debtor then filed its Complaint for Turn Over of Property seeking to recover the remaining balances in its accounts as of the filing of the Chapter XI petition. The bankruptcy judge ruled that the Bank was not entitled to set off the balances in the accounts as of the time of filing of the Chapter XI petition and ordered the Bank to restore to Debtor the sum of $27,993.70, and to permit Debtor to withdraw such amount upon his order becoming final. The bankruptcy judge also found the Bank to be in contempt of court (Order of January 12, 1976).

The bankruptcy judge found that the general checking accounts of Debtor, even though in possession of the Bank to whom Debtor owed money, comes within the exclusive jurisdiction of the bankruptcy court on the date of the filing of the Chapter XI petition and the bankruptcy court is authorized to enjoin or restrain any interference with the property in a summary proceeding. Bankruptcy Act, Section 311, 11 U.S.C. § 711; Bankruptcy Rules, Rule 11–44. The bankruptcy court further found that the term "lien" as used in Bankruptcy Rule 11–44 providing for the automatic stay of any act to enforce any lien against a Chapter XI debtor's property, includes any consensual security interest in personal property, and that therefore the Bank had no right to resort to the remedy of set-off at the time that the petition was filed, or thereafter, inasmuch as the filing of the petition created an automatic stay of any act to enforce any lien against the Debtor's property.[1] Bankruptcy Act, Section 2(a)(13), 11 U.S.C. § 11(a)(13). Moreover, the bankruptcy court held that such set-off was in violation of the general restraining order entered by the bankruptcy court in aid of the automatic stay provisions of the Bankruptcy Act.[2]

The bankruptcy judge stated as follows: "Liquidation is not the objective of Chapter XI, rather the goal of Chapter XI is, by financial restructuring, to continue in operation a business burdened with financial problems in an attempt to create a viable and financially healthy organization. This objective requires that the Debtor be allowed to collect that amount owed to him to keep its cash flow sufficient for operating purposes. To allow the Bank, subsequent to the filing of a Chapter XI proceeding, to set-off all of the Debtor's operating capital would frustrate the purpose of Chapter XI."

The bankruptcy judge further held that: ". . . the Bank did knowingly and wilfully act in contempt of Court by

1. Rule 11–44 provides, in pertinent part as follows:

   "(a) Stay of Actions and Lien Enforcement. A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property . . . ."

2. The restraining order reads in part as follows:

   "FURTHER ORDERED that all creditors of, claimants against, stockholders of any nature whatsoever in the property and assets of the said Debtor, wheresoever situated or domiciled, be, and they hereby are, temporarily enjoined and stayed, until further Order of this Court, from pursuing or attempting to pursue or commence any suits or proceedings at law, in equity or otherwise, against the said Debtor or its property or against any nominees, assignees, or grantees of said Debtor, or against any person or persons, corporation or corporations, claiming by, under or through it, directly or indirectly, on account of or based upon any right, claim or interest which any such creditor, claimant, stockholder or other person may have had, at the date of the filing of the Petition, against the Debtor under Chapter XI of the Bankruptcy Act in, to or against the said Debtor or against its property and assets, or from removing or interfering with any such property or assets, or from terminating, attempting to terminate, declaring or attempting to declare any lease with Debtor in default except with the specific authorization of this Court, from filing, or instituting, or prosecuting any complaint, suit, or proceeding before any governmental body or agency without the specific authorization of this Court."

interfering with property of the Debtor in the exclusive jurisdiction of this Court and by its refusal to comply with a lawful order of this Court enjoining and restraining any interference with property of the Debtor, and it further appearing that the debtor is entitled to certain relief . . ., it is herewith ADJUDGED that the said Fulton National Bank is in contempt of court . . . ."

The Bank was ordered to establish and maintain a trust account in the name of the Debtor, from which the Debtor could withdraw funds at will from the day that the bankruptcy court's order became final, in order to purge itself of its contempt. Failure to do so would result in a two hundred ($200.00) dollar penalty. This appeal followed.

The questions presented on this appeal are (1) whether the Bank was authorized to exercise a right to set-off against the Debtor's checking accounts under the facts and circumstances at the time this was done, and (2) whether the bankruptcy judge abused his discretion in holding the Bank in contempt of court for exercising this alleged right to set-off under the facts of this case.

### The Set-Off

Section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108, provides:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

In ordinary bankruptcy, a bank may set off a deposit against an unmatured indebtedness even though done after the petition is filed, absent fraud or collusion, for purposes of effecting a preference. See 4 *Collier on Bankruptcy* ¶ 68.02. The courts have been divided over whether such a set-off is permissible in a Chapter XI proceeding.

However, this Court, in a decision rendered by Judge Hill, has squarely held that a bank has no such right to set-off in a Chapter XI proceeding. *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.,* 400 F.Supp. 280 (N.D.Ga.1975); *see also In re Williams,* 422 F.Supp. 342, Bankruptcy No. B75–3669A (N.D.Ga. May 18, 1976), wherein Judge Henderson held that a bank had no such right to set-off in a Chapter XIII proceeding.

The Court in *Preferred Surfacing* stated as follows:

"[O]n the date of the filing of the Chapter XI petition the general checking account of the Debtor, even though in the possession of the Bank, came within the exclusive jurisdiction of the Bankruptcy Court. Therefore, the Bankruptcy Court was authorized to enjoin and restrain any interference with the property in a summary proceeding. This authority is recognized and promoted by the recent promulgation of Rule 11–44. . . . The rule is designed to protect the debtor against harassment and possible frustration of his rehabilitation by prejudicial dismemberment and disposition of his assets before he can obtain the necessary injunctive relief. *See* 8 *Collier on Bankruptcy* ¶ 3.20[3].

"From the foregoing, it becomes clear that the property here in question came within the exclusive jurisdiction of the Bankruptcy Court at the filing of the Chapter XI petition and that the Bankruptcy Court had summary jurisdiction over the property. The automatic stay provisions of Rule 11–44 as well as the [restraining] order issued by the bankruptcy judge operated against all creditors, whether they be secured or unsecured, even though a Chapter XI arrangement may not substantially affect secured creditors' rights. The restraining order merely denies resort to a remedy during the pendency of the proceedings. Thus, the Bank had no right to resort to the unilateral, self-help remedy of set-off at the time and under the circumstances of this case."

400 F.Supp. at 284. The Court specifically noted that left open is the question of what treatment or protection should be accorded

the Bank with reference to its secured claim which it has been prohibited from satisfying by set-off during the initial stages of the Chapter XI proceeding.

This question was addressed, however, in Judge Henderson's decision in *In re Williams,* involving a Chapter XIII proceeding. The Court stated:

"Upholding the bankruptcy judge's discretion to defer a set-off does not constitute a blanket approval of his order in this case. On the contrary, he did not have the power to require that C&S establish a separate trust account on which the debtor would eventually obtain an absolute right of withdrawal."

The Court notes that since the time that this appeal was taken Debtor has been adjudicated bankrupt. The estate is being liquidated and liquidation is now the admitted as well as de facto goal of the proceeding. Assuming arguendo that the decision in *Preferred Surfacing* is correct, *i. e.*, that the bankruptcy court had some power to postpone the exercise of the alleged right of set-off, the bankruptcy court did not have the power summarily to order the Bank to make the balances in the Debtor's accounts available for withdrawal by the Debtor without providing for any protection for the rights of this secured creditor in the Chapter XI proceeding. At least to this extent the order of the bankruptcy judge must be reversed. In a Chapter XI proceeding, the rights of secured creditors cannot be ultimately affected, and the order of the bankruptcy judge in the instant action permits the Debtor to dissipate the Bank's security. See *In re Presidential Homes, Girard Trust Bank v. Eleuteri,* CRR Bankruptcy Court Decisions 983 (D.N.J.1975). In such a situation the bankruptcy judge should have fashioned a remedy by which the Debtor would be required to afford some protection to the Bank, as secured creditor, before withdrawing the funds from the checking accounts.

However, inasmuch as the proceedings in the bankruptcy court are no longer under Chapter XI, but rather, are in ordinary bankruptcy, it is not necessary for the Court to specifically determine whether the Bank had a right to set-off upon the filing of the Chapter XI petition. In liquidating "straight" bankruptcy, set-offs are generally authorized by Section 68 even though the creditor/debtor may thereby obtain a distributional preference. However, under certain circumstances, even in a straight bankruptcy, such a set-off will not be allowed.[3] Therefore, it seems appropriate at this juncture for the Court to remand the case to the bankruptcy court for a determination of whether the Bank now has a right to set-off in the presently on-going straight bankruptcy proceedings. The Court disagrees with the opinion in *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.,* Case No. B75–1287A (N.D.Ga., Jan. 20, 1976), in which the bankruptcy judge stated that such a practice "would very likely have the effect of encouraging wholesale violations of court orders." Such a belief assumes the lack of good faith on the part of creditors and that they will attempt to frustrate a debtor's efforts to rehabilitate itself under Chapter XI. The Court does not accept such a presumption as a "rule of thumb." Inasmuch as this is a bankruptcy proceeding, the Court may take into account certain equitable considerations. Certainly if a creditor is attempting to frustrate the purposes of the Bankruptcy Act or proceeding in any other bad faith manner the bankruptcy court, or this Court, may take the steps deemed appropriate to discourage and negate such practices. Such does not appear to be the situation in the instant action. The Bank does not appear to be attempting to legitimize an intended wrongdoing. See discussion *infra.* For these reasons the remand with directions to the bankruptcy court is proper.

3. For instance, the case law which has developed over the years in construing the set-off provisions of Section 68 indicates that a bank's set-off rights may not be exercised in straight bankruptcy with respect to funds deposited for a special purpose or impressed with a trust. 4 *Collier on Bankruptcy,* ¶ 68.16[1]; *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co.,* Case No. B75–1287A (N.D.Ga.1975).

*Contempt*

■ The power of a Court to punish for contempt has generally been recognized as inherent and includes the courts of bankruptcy. *Boyd v. Glucklich,* 116 F. 131 (8th Cir. 1902); *Preferred Surfacing, Inc. v. Gwinnett Bank & Trust Co., supra,* 400 F.Supp. at 284. Section 2(a)(13) of the Bankruptcy Act, 11 U.S.C. § 11(a)(13), invests the courts of bankruptcy with the power to "enforce obedience by persons to all lawful orders, by fine or imprisonment or fine and imprisonment."

The bankruptcy judge's contempt order in the instant proceeding was based upon the Bank's failure to comply with the restraining order issued by the bankruptcy court upon the filing of the petition and upon the automatic stay of Rule 11–44.

The Bank contends that the restraining order was never served on the Bank, and counsel for the Bank did not become aware of it until it appeared as an attachment to Debtor's Brief filed several months later in support of its complaint for turnover of property against the Bank. Furthermore, the Bank contends that it was unjust to presume the Bank cognizant of the novel interpretation of Rule 11–44 that would be enunciated by the bankruptcy court, *i. e.,* that the automatic stay provisions of Rule 11–44 restrain bank set-offs in a Chapter XI proceeding. The Court believes that the Bank's position is well taken.

The lessons of the cases involving set-offs is not entirely clear, nor is their applicability to a Chapter XI proceeding as in the instant action. There is some authority, albeit perhaps dictum, that a bank is entitled to set-off in a Chapter XI proceeding similar to the case *sub judice. First National Bank in Fort Lauderdale v. Davis,* 317 F.2d 770 (5th Cir. 1963); see also, *Tyler v. Marina Midland Trust Co. of New York,* 128 F.2d 927 (2nd Cir. 1942). However, authority to the contrary also exists. See *Lowden v. Northwestern National Bank and Trust Co.,* 298 U.S. 160, 163–65, 56 S.Ct. 696, 80 L.Ed. 1114 (1936); 9 *Collier on Bankruptcy* ¶ 7.10 at 57, 58, n. 11.

■ Thus the Bank really had no fair warning of the approach that would be taken by the bankruptcy court. There is little, if any, authority construing Rule 11–44 in such a manner and the restraining order, which apparently was never served on the Bank, makes no mention of set-offs. Judge Hill's decision in *Preferred Surfacing* was not issued until September 25, 1975, the Bank having set-off the accounts on August 13, 1975.

The bankruptcy judge's finding that the Bank "knowingly and wilfully" acted in contempt of court by interfering with the property of the Debtor contrary to the court's order and Rule 11–44 is erroneous. Accordingly, the bankruptcy court's order of contempt is hereby REVERSED and the contempt citation hereby ORDERED SET ASIDE.

In accordance with the terms of this Order, the bankruptcy court's order entered January 12, 1976, is hereby ORDERED REVERSED IN PART AND REMANDED WITH DIRECTIONS IN PART.