In re CARIBBEAN FOOD PRODUCTS, INC., et al., Debtors-Appellees,

v.

BANCO CREDITO Y AHORRO PONCE-NO, Defendant-Appellant.

No. 77–1447.

United States Court of Appeals, First Circuit.

Argued Feb. 13, 1978.

Decided May 4, 1978.

---

Lawrence Odell, San Juan, P. R., with whom Juan F. Doval, San Juan, P. R., was on brief, for defendant-appellant.

W. H. Beckerleg, Hato Rey, P. R., for debtors-appellees.

Before COFFIN, Chief Judge, BOWNES and MOORE,* Circuit Judges.

BOWNES, Circuit Judge.

The primary issue in this case is whether Bankruptcy Rule 11–44(a) is applicable where there had been a loan agreement entered into between debtors and the principal creditor prior to the effective date of the rule. Creditor-appellant also contends that the bankruptcy court's order under Rule 11–44(a) is either moot because of the

subsequent adjudication of the debtors as bankrupts or ineffective because of a lack of compliance by the debtors with the terms of the order.

The facts are not in dispute. Debtors and appellant executed a "Loan Agreement, Assignment of Accounts Receivable and Factor's Lien" on March 23, 1972, to be effective through November 15, 1972.[1] The Agreement called for appellant to grant debtors a revolving line of credit of up to a million dollars in amounts not to exceed:

(i) 70% of the balance of the accounts receivable assigned to Appellant, after deducting therefrom all accounts receivable remaining unpaid for more than 60 days; and

(ii) 50% of the values of materials, goods in process and inventory subject to a factor's lien in favor of Appellant.

The line of credit was secured by an assignment of present and future accounts receivable and a factor's lien covering materials, goods in process, and inventory.

When the agreement expired on November 15, 1972, appellant made no further advances to debtors, but continued to administer its lien and collect the accounts receivable to amortize the debt. On September 5, 1974, appellant exercised its right to set off against debtors' checking accounts which contained a compensating balance as required by the Agreement. On September 6, debtors filed petitions under Chapter XI of the Bankruptcy Act. After the filing, of which appellant was aware, appellant collected directly from debtors' customers the accounts receivable assigned under the Agreement for a total of $83,-217.04, and applied this to the debt owed in the amount of $117,790.58. Debtors then opened accounts in other banks in which they deposited monies collected by them from customers.

On September 20, 1974, debtors filed an "Application for a Turn-Over Order" in the nature of an adversary proceeding under

---

* Of the Second Circuit, sitting by designation.

1. Both debtors are *treated as one for purposes of this opinion since they* acted in concert as to all pertinent facts.

Rule 701 of the Rules of Bankruptcy Procedure.[2] The application requested an order that appellant "turn over all sums of money paid to the bank since the filing of the petition by the debtor and such funds to be deposited in court until the court determines what funds should remain with the debtor-in-possession for the purpose of operating the business and what funds should be allowed the bank."

Appellant filed an answer and counterclaim to the turnover application, and, after a hearing on October 25, 1974, the bankruptcy judge, on January 22, 1975, held that Rule 11-44(a) applied and ordered the appellant to account for and turn over to the bankruptcy court all funds collected from the accounts receivable since the date of the Chapter XI filing. A further order was made by the bankruptcy court on February 13, 1975, finding:

> From hearings held and from the record it is found that the debtors need the use of the funds being held by the Defendant and the funds deposited with this Court in order to continue the operation of their businesses and that without the use of said funds the interests of the unsecured creditors are being greatly prejudiced while the secured position of the defendant is not put into jeopardy by the use of said funds for the operation of the debtors' business.

The bankruptcy judge then issued six specific orders directed to appellant and debtors. The bankruptcy orders were affirmed by the district court on July 22, 1977.

Debtor Carolina Can Company, Inc., was adjudged a bankrupt on November 13, 1975,[3] and debtor Caribbean Food Products, Inc., was adjudged a bankrupt on October 19, 1977.

We now address the question of the applicability of Rule 11-44(a). Congress empowered the Supreme Court to prescribe general rules for practice and procedure under the Bankruptcy Act in 1966. 28 U.S.C. § 2075. In 1973, the Supreme Court approved new rules for practice and procedure under Chapter XI of the Bankruptcy Act, effective in July, 1974. Rule 11-44(a) was enacted and provides:

> (a) *Stay of Actions and Lien Enforcement.* A petition filed under Rule 11-6 or 11-7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

Appellant's position is that, since the rule was enacted after the Agreement was signed, the application of it by the bankruptcy judge and district court here was retroactive and, hence, invalid.

This argument does not stand scrutiny. The rule became effective in July of 1974, before the filing of the Chapter XI petition in September of 1974. Plainly, the purpose of the rule was to stay automatically any proceeding to enforce *any* lien against the bankrupt's property. The framers of the rule must certainly have realized that the automatic stay would apply to all liens cre-

---

2.  Rule 701. *Scope of Rules of Part VII.*

    The rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. Such a proceeding shall be known as an adversary proceeding.

3.  The notice of adjudication gives September 5, *1974,* as the date of the order, but the notice itself is signed on March 23, *1976,* and notifies the creditors that the last date for filing a complaint objecting to the discharge is April 22, *1976.* Obviously, the notice date of September 5, 1974, is incorrect. We have used the date given in Appellant's Brief at p. 22, which seems to logically fit the time frames set forth in the notice.

ated prior to July of 1974. No exception was carved out, as could have been done readily, for prior liens. But, of even more significance, the lienholder is not being deprived of anything. All the rule does is suspend action under the lien pending further proceedings under Chapter XI. The rule does not, as appellant suggests, nullify or abrogate the loan Agreement. As was point out by the Supreme Court in an earlier case involving the bankruptcy court's power to enjoin secured creditors:

> The injunction here in no way impairs the lien, or disturbs the preferred rank of the pledgees. It does no more than suspend the enforcement of the lien by a sale of the collateral pending further action.

*Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co.*, 294 U.S. 648, 676–677, 55 S.Ct. 595, 606, 79 L.Ed. 1110 (1935). All lien agreements, mortgages, and creditors' arrangements are subject to the laws and rules of bankruptcy in effect at the time that the bankruptcy petition is filed; the date of the lien agreement is irrelevant as to the effective date of the rule. A simple analogy is to the field of estates and trusts. It has never been seriously suggested that changes in the tax law or regulations would not apply to wills and trusts executed but not probated prior to the effective date of the new law or regulation.

Moreover, as the advisory note points out, the new rule is largely a strengthening of former bankruptcy rules and principles.

> This rule supplements and reinforces the policy of §§ 11a, 311, and 314 of the Act. Section 11a provides in terms for a mandatory stay of all actions founded on dischargeable claims which are pending against the debtor when the petition is filed, and § 314 authorizes the stay of pending actions and of the commencement of actions whether founded or not on dischargeable claims.

> Section 314 also authorizes the stay of any act or proceeding to enforce any lien on the property of the debtor. The term "lien" is used in this rule to indicate a consensual security interest in personal or real property, a lien obtained by judicial proceedings, a statutory lien, or any other variety of charge against property securing an obligation. The authority conferred by § 314 with respect to staying enforcement of liens is discretionary; nonetheless, § 311 gives the court exclusive jurisdiction of the debtor and its property wherever located and this jurisdictional grant includes granting stays and injunctions. See 8 Collier ¶ 3.02 (1963). The relief from a stay obtainable under subdivision (c) or (d) of the rule could appropriately include permission to reclaim collateral.

> Advisory Committee's Note to Rule 11–44. While the new rule has been characterized as a "far reaching departure from the provisions of the Bankruptcy Act in connection with stays of proceeding against debtors who have availed themselves of the provisions of Chapter XI," 14 Collier on Bankruptcy ¶ 11–44.02,[4] the only change brought about by the rule in this instance is that a stay which formerly had to be sought by

---

4. The more substantial changes brought on by this new rule are concerned with the effect of the automatic stay as a result of expanded jurisdiction under Chapter XI, section 311, 11 U.S.C. § 711, when compared with the straight bankruptcy chapters of the Bankruptcy Act.

Sec. 311. 'Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located.

*See* 8 Collier's on Bankruptcy �hook 3.01. In comparing Chapter XI stays to those of other provisions, *cf.* Bankruptcy Rule 601, Rule 11–44 actually presents a novel approach to the automatic reach of the stay on the exercise of rights to secured assets in the hands of the creditor because of Chapter XI's extension of jurisdiction to property of the debtor actually in the hands of another. *See* 14 Collier on Bankruptcy ⸘ 11–44.02. Chapter X reorganizations, however, contain an identical jurisdictional basis. *Compare* section 111, 11 U.S.C. § 511, with section 311, 11 U.S.C. § 711. In addition, its provisions for granting a stay are not dissimilar to those of Chapter XI, and the implementing rules are practically identical. *Compare* section 113, 11 U.S.C. § 513, with section 314, 11 U.S.C. § 714; *compare* Bankruptcy Rules 10–601(a) and 11–44(a).

the debtor became automatic; relief from the stay to be granted at the discretion of the bankruptcy court. Rule 11–44(c) and (d). Section 314, 11 U.S.C. § 714, provided the same relief as provided by Rule 11–44(a) on an affirmative request for an injunction or stay.[5]

The next issue is appellant's claim of mootness. It is based on the premise that, since debtors are now in straight bankruptcy, the only thing left to do is liquidate the assets for the benefit of creditors, and since the appellant has a valid and collectible lien on the accounts receivable, delivery of the $83,217.04 to the bankruptcy court would be a meaningless gesture. This argument, which has surface appeal, fails because it does not take into account the specific provisions of the bankruptcy law. In straight bankruptcy, there is also a provision for an automatic stay:

> The filing of a petition shall operate as a stay of any act or the commencement or continuation of any court proceeding to enforce (1) a lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy by attachment, judgment, levy, or other legal or equitable process or proceedings.

Bankruptcy Rule 601(a).

The Advisory Committee's Note states:

> The first branch of subdivision (a) protects the custody of the bankruptcy court against interference by an attempt to enforce a lien, whether the attempt is by a judicial proceeding or by a nonjudicial mode of enforcement. Property is in the custody of the bankruptcy court if it is in the actual or constructive possession of the bankrupt at the date of bankruptcy. (citations omitted)

The bankruptcy court and the district court both found the accounts receivable were property of the debtors subject to appellant's lien; this put them in the custody of the bankruptcy court. The district court relied on clause 3 of the Agreement which indicated the general nature of the assignment as a financing arrangement and not a sale, and clause 8(e) which provided: "The accounts receivable hereby assigned are, in fact, collateral to secure the loans that are to be made hereunder and such accounts are not being sold to the Lender."

The case on which appellant primarily relies for its mootness claim, *In the Matter of Ben Hyman & Co., Inc.,* 423 F.Supp. 1006 (N.D.Ga.1976), concerned a set off, not accounts receivable. A set off is specifically authorized by section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108.[6] We point out that there has been no objection to the set off by appellant of debtors' checking accounts in this case.

The nature of a Chapter XI proceeding must also be considered. Section 378(a)(2) of the Bankruptcy Act, 11 U.S.C. § 778(a)(2) provides:

> (a) Upon the entry of an order directing that bankruptcy be proceeded with—
>
> . . . . .
>
> (2) in the case of a petition filed under section 322 of this Act [USCS § 722 of this title], the proceeding shall be conducted, so far as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered on the day when the petition under this chapter [USC § 701 *et seq.* of this title] was filed

. . . . .

Bankruptcy Rule 122(1) provides:

> *Conversion of a Chapter Case to Bankruptcy.* When an order is entered in a

---

**5.** Sec. 314. The court may, in addition to the relief provided by section 11 of this Act and elsewhere under this chapter, enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor, and may, upon notice and for cause shown, enjoin or stay any proceeding to enforce any lien upon the property of a debtor.

**6.** In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be set off against the other and the balance only shall be allowed or paid.

Chapter X, XI, XII, or XIII case directing that the case continue as a bankruptcy case, the procedure shall be as follows:

(1) In all respects other than as provided in the following paragraphs, the case shall be deemed to have been commenced as of the date of the filing of the first petition initiating a case under the Act and shall be conducted as far as possible as if no petition commencing a chapter case had been filed.

A fair reading of these provisions can only mean that appellants were stayed from collecting the accounts receivable after the filing of the Chapter XI proceeding.

■ Finally, appellant claims that, since debtors have not complied with the terms of the order, it is ineffectual and should not be enforced. The facts show that appellant's failure to obey the order has made it ineffectual. Appellant, immediately upon learning of the Chapter XI filing, wrote to the customers of the debtors and directly collected the accounts receivable. By order of the bankruptcy court dated January 22, 1975, appellant was directed to account for and turn over to the bankruptcy court all accounts receivable collected after the Chapter XI filing. This was not done. On February 13, 1975, the bankruptcy judge issued an order requiring, among other things,

> that the debtors open an account with defendant and deposits [sic] all funds in the possession of the debtors in said account plus the funds deposited in this court and that the defendant deposit the sum of $83,217.04 to the account of Debtors.

It is true that the order was not followed by either debtors or appellant, but the critical deposit was the one of $83,217.04. Without that sum available, the rest of the order became meaningless. To rule now that the order does not have to be obeyed because appellant's failure to follow it made it ineffectual would not only condone a flagrant violation of a valid bankruptcy order, but would encourage such evasive tactics in the future.

*The judgment of the district court is affirmed.*