Hillsborough
No. 82-313

NASHUA TRUST COMPANY

v.

MIDWAY EXCAVATORS, INC. & a.

April 6, 1984

634

*Hamblett & Kerrigan P.A.*, of Nashua (*John V. Dwyer, Jr.*, and *James M. McNamee, Jr.*, on the brief), by brief for the plaintiff.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Linda*

*Crandall Connell* on the brief), by brief for the defendants, Midway Excavators, Inc. and Everett J. Prescott, Inc.

PER CURIAM. The plaintiff, Nashua Trust Company, appeals from the granting of partial summary judgment in the amount of $57,793.29 for the defendants, Midway Excavators, Inc. and Everett J. Prescott, Inc. For the reasons which follow, we reverse and remand.

In 1978, the defendant Midway, general contractor under a sewer construction contract with the City of Dover, contracted with Electrical Distributors, Inc. (EDI) for the purchase of certain materials for the sewer construction project, including pipe and fittings. EDI's supplier, the defendant Prescott, upon EDI's request, shipped the materials directly to the Dover project site between October 31 and December 31, 1978.

Previously, in August 1977, EDI had given the plaintiff, Nashua Trust, a security interest in its accounts receivable, both present and future, to secure a note in the amount of $50,000. It is undisputed that Nashua Trust perfected its security interest.

On January 5, 1979, EDI filed a petition for an arrangement, under Chapter XI of the then applicable bankruptcy law, in the United States Bankruptcy Court for the District of New Hampshire. *See* Act of June 22, 1938, ch. 575, § 301 *et seq.*, 52 Stat. 840, 905–16 (codified at 11 U.S.C. § 701 *et seq.*) (repealed 1979). Because Midway owed EDI $59,005.14 for pipe delivered to the project site, EDI scheduled that amount as a receivable due from Midway. Prescott was listed as one of approximately 200 unsecured creditors.

On January 18, 1979, Prescott had unpaid invoices totalling $57,793.29 due from EDI for materials shipped to the Dover project site within the prior ninety days. Prescott also had unpaid invoices in excess of $1,211.85 due from EDI for materials it had sold to EDI for other customers. On January 18, Prescott wrote to Midway and stated that EDI was indebted to Prescott in the amount of $59,005.14 for materials delivered to the Dover project site. Prescott demanded that Midway pay to Prescott all that Midway owed EDI at that time. Prescott further informed Midway that if Midway paid to EDI the amount Midway owed EDI, then Prescott would exercise its materialman's lien rights under RSA chapter 447. On that same day, January 18, Midway, still indebted to EDI, paid the sum of $59,005.14 directly to Prescott.

On March 15, 1979, Nashua Trust, alleging that it had been given permission to do so by the bankruptcy court, foreclosed its security interest in EDI's accounts receivable. It then sought to collect the account receivable from Midway. Midway refused payment and

forwarded the demand to Prescott, which had promised, in the January 18, 1979, letter, to indemnify Midway against any claim by EDI, EDI's creditors or any trustee/referee appointed in the Chapter XI proceeding. By way of reply, Prescott informed Nashua Trust that Midway had paid the amount to Prescott upon Prescott's threat of exercising its materialman's lien rights. Nashua then brought this action in the superior court against Midway on its debt and against Prescott for conversion.

Upon cross-motions for summary judgment, the Superior Court (*Goode*, J.) granted partial summary judgment, pursuant to RSA 491:8-a, in the amount of $57,793.29 to the defendants. The court denied summary judgment for the balance of $1,211.85. The court denied the plaintiff's motion to set aside the verdict and for reconsideration and rehearing.

RSA 491:8-a, III, states in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact *and that the moving party is entitled to judgment as a matter of law.*"

(Emphasis added.) We conclude that the defendants did not meet their burden of showing their entitlement to judgment as a matter of law. *See D. W. Clark Road Equip., Inc. v. Murray Walter, Inc.*, 124 N.H. 281, 283, 469 A.2d 1326, 1328 (1983).

■■ All parties acknowledge that EDI filed the Chapter XI petition in the bankruptcy court prior to January 18, 1979, when Prescott demanded and received payment from Midway. Because the bankruptcy case was commenced prior to October 1, 1979, the effective date of the Bankruptcy Code of 1978, it is governed by the Bankruptcy Act of 1898. Act of Nov. 6, 1978, Pub. L. No. 95–598, Title IV § 403(a), 92 Stat. 2682, 2683 (codified at 11 U.S.C. prec. § 101). Section 311 of the Bankruptcy Act vested the bankruptcy court with exclusive jurisdiction of the debtor and his property, wherever located, from the filing of the petition. Act of June 22, 1938, ch. 575, § 311, 52 Stat. 840, 906 (codified at 11 U.S.C. § 711) (repealed 1979); 8 COLLIER ON BANKRUPTCY § 3.02 n.1 (14th ed. 1978). "[L]eave of the court is necessary to the rightful removal of property from the possession of the trustee or debtor-in-possession under an arrangement proceeding." *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658, 660 (2d Cir. 1940); *see also* Kennedy, *Automatic Stays Under The New Bankruptcy Law*, 12 U. MICH. J.L. REF. 3, 16 (1978). ("It is a

well established principle of bankruptcy law that property in the possession of a debtor at the time of the filing of a petition by or against him is in the custody of the bankruptcy court, and any act that would tend to interfere with the availability of the property for the purposes of administration of the estate would be at least potentially contemptuous.")

■■ The purpose of Chapter XI is "to provide a quick and economical means of facilitating simple compositions among general creditors . . . ." *SEC v. American Trailer Rentals*, 379 U.S. 594, 606 (1965). By enacting Chapter XI, Congress "meant to provide a means for the preservation of a going business which otherwise, because of overwhelming debt burden, would disappear from the economic scene . . . ." *Meyer v. C.I.R.*, 383 F.2d 883, 890 (8th Cir. 1967). "For a manufacturer or retailer seeking to make an arrangement with his unsecured creditors it is imperative to the chapter XI plan that the accounts receivable be used as working capital for the purchase of new inventory and for payment of other operating costs . . . ." Werth and Reed, *The Chapter XI Stay Order and the Secured Creditor*, 38 OHIO ST. L.J. 33, 57 (1977).

In essence, the defendants argue that EDI's filing of the petition for an arrangement is of no consequence to Prescott's subsequent demand and payment from Midway because that demand and payment was not an act to enforce *a lien against EDI or EDI's property.* *See* Bankruptcy Chapter XI Rule 11-44(a). Rather, the defendants argue, Prescott had a materialman's lien under RSA chapter 447 which attached to *the payment due from Dover to Midway.* RSA 447:15, as written at the time of these parties' actions, provided in pertinent part that, in the case of public works contracts, a materialman's lien *attaches to any money due* or to become due *from the State or any sub-division thereof.* Nashua Trust, on the other hand, argues that a materialman's lien attaches to the property on which the material is ultimately used, i.e., the Dover project, and that notice to the owner or the person having charge of the property must be given in order to preserve the lien.

Although hardly free from doubt, we assume that the notice given to *Midway*, by the letter dated January 18, 1979, was sufficient to preserve Prescott's lien. *But cf.* RSA 447:5, :6 (notice of intent to claim lien after the material is furnished is given in writing *to the owner or to the person having charge of the property*). We further assume that Prescott's lien attached to money due to Midway from the City of Dover. *See* RSA 447:15. However, although the debt to which Prescott's lien attached may not have been property of EDI (*see Loyd v. Stewart & Nuss, Inc.*, 327 F.2d 642, 645–46 (9th Cir.

1964)), the question remains whether the $59,005.14 which Prescott did receive was property of EDI.

What Prescott demanded from Midway, on January 18, 1979, and what Midway paid, on that day, was all payments due EDI from Midway. It would appear that this debt from Midway to EDI, however, was property of EDI which had passed on January 5, 1979, the date of the filing of the petition, to the possession of the trustee or debtor-in-possession, and was on January 18, 1979, within the jurisdiction of the bankruptcy court. *See Caribbean Food Prod. v. Banco Credito, Etc.*, 575 F.2d 961, 965 (1st Cir. 1978) (accounts receivable were found by bankruptcy court and district court to be property of the debtor and within custody of bankruptcy court); *In re Weston*, 68 F.2d 913, 914–15 (2d Cir. 1934) (debts due bankrupt by third parties are within constructive jurisdiction of the bankruptcy court); *In re Borok*, 50 F.2d 75, 77 (2d Cir. 1931) (accounts receivable passed to the possession of the trustee).

■ Since the defendants, in their motion for summary judgment, gave no indication that they had received permission from the bankruptcy court to assert control over EDI's account receivable, they have failed to show that they were entitled to summary judgment as a matter of law. Accordingly, we reverse and remand.

*Reversed and remanded.*