**JOSEPHINE LUTALI, Plaintiff**

**v.**

**JOE PEDRO dba T.J. PEDRO CONSTRUCTION, Defendant**

**AMERIKA SAMOA BANK, Intervenor**

High Court of American Samoa
Trial Division

CA No. 42-92

December 29, 1994

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel:        For Plaintiff, Charles V. Ala`ilima
                For Defendant, Marshall Ashley and Tate J. Eldridge
                For Intervenor, William H. Reardon

Order Requiring Further Information:

## FACTS

On January 22, 1993, plaintiff Josephine Lutali ("Lutali") was awarded a judgment, following trial, against defendant Joe Pedro ("Pedro"). On April 29, 1993, Pedro and his wife filed a petition for bankruptcy in the federal District Court for the Western District of Washington, automatically instituting a stay preventing creditor collection actions. Lutali was not listed as a pre-petition creditor in the bankruptcy schedules. On August 6, 1993, the federal court issued the bankruptcy discharge order.

Meanwhile, on June 30, 1993, without notice or actual knowledge of the bankruptcy proceedings, Lutali obtained a writ of garnishment. On August 4, 1994, she moved for release of the garnished funds, which amounted to rent payments owed by the American Samoa Government ("ASG") for the lease of Pedro's house and leasehold interest in the underlying communal land. The garnishment first reached these rents on August 3, 1994, and as of December 22, 1994, the court was holding garnished funds totaling $11,200. On August 17, 1994, Pedro moved to stay the execution of Lutali's judgment. The court heard both motions on August 31, 1994, with counsel for the original two parties present.

Then, on November 1, 1994, intervenor Amerika Samoa Bank ("ASB") moved to intervene in this action and on November 30, 1994, was permitted to do so. With ASB formally involved, the court heard this matter again on December 16, 1994, to further consider the proper disbursement of the garnished funds. Counsel for the three parties were present.

ASB is Pedro's creditor on a loan in the original amount of $90,000 which was secured by a mortgage established on September 17, 1991, on the property leased from Pedro by ASG. The house is listed as an asset in the

74

bankruptcy schedules, described as "a potential partial leasehold interest" with the proceeds assigned to ASB for payment of a loan to build the house. ASB was not listed as a pre-petition creditor.

The mortgage provides that on Pedro's failure to make any loan payment he will be in default, and the whole outstanding debt, at ASB's option and without notice, will become due and payable. In that event, as one remedy, and after giving notice to Pedro as lessor, ASB becomes Pedro's assignee to receive all accrued and future rents payable by ASG, and his attorney in fact to manage the leasehold. Pedro defaulted in the loan payments on or about August 1, 1994. ASB elected to treat the whole amount due and payable and, it appears, actually notified Pedro and ASB that it would exercise its mortgage rights in the leasehold between the first and second garnishments of the rental payments. ASB is also pursuing its non-judicial foreclosure rights, with the sale scheduled on January 6, 1995.[1]

Pedro is currently processing amendments to the bankruptcy schedules to add all pre-petition creditors located in American Samoa and seeking discharge of his debts to them.

## DISCUSSION

### A. Indebtedness to Lutali

As to Lutali, two legal issues are immediately before this court: (1) whether the automatic stay effective in bankruptcy proceedings is binding upon the courts of American Samoa; and if so (2) whether an automatic stay operates as a bar to legal action by unlisted creditors who have no notice of the proceedings.

### 1. Actions of the Bankruptcy Court Are Binding in American Samoa

■ In 1987, this court held that a bankruptcy court "which *has* acquired jurisdiction" over a debtor and his legal rights and obligations may issue a judgment which is binding in American Samoa. *Southwest Marine of*

---

[1] Although this issue is not before us, we simply note that ASB's action in this matter potentially violates the automatic stay, since the bankruptcy proceedings may have been reopened to consider amendment of the bankruptcy schedules, and the house which is the subject of the foreclosure sale is potentially the property of the bankruptcy estate.

75

*Samoa v. S & S Contracting*, 5 A.S.R.2d 70, 82 (Trial Div. 1987) (emphasis in original). The automatic stay in bankruptcy proceedings is effective in American Samoa against all legal proceedings or efforts to collect debts. *Id.* at 83. This stay bars creditor actions in courts of law, administrative proceedings, non-governmental tribunals or private collection efforts of any sort. *Id.* We readily conclude, by precedent and the rule of stare decisis, that this court has jurisdiction in the present case and can give effect to the bankruptcy court's decisions.

### 2. Automatic Stay Bars Unlisted Creditors

■ The automatic stay in bankruptcy was in place on June 30, 1993, when Lutali obtained the writ of garnishment. Judgments obtained or other actions taken in violation of the stay are void and of no effect. *Kalb v. Fuerstein*, 308 U.S. 433 (1940); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990); *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982); *Caribbean Food Products v. Banco Credit Y Ahorro Ponceno*, 575 F.2d 961, 966 (1st Cir. 1978); *Meyer v. Rowen*, 181 F.2d 715, 716 (10th Cir. 1950); *Potts v. Potts*, 142 F.2d 883, 888 (6th Cir. 1944), *cert. denied*, 324 U.S. 868 (1945).

■ Lutali argues that Pedro's debt to her is not discharged, and that her actions to collect were not stayed since she did not have notice or actual knowledge of the bankruptcy proceedings. 11 U.S.C.A. § 523(a). While notice or actual knowledge to make a timely claim is required for a discharge to be effective, the rule voiding actions in contravention of a stay applies to unlisted creditors, "even if the creditor had no notice of the stay," as in the present case. *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990); *In re Smith*, 876 F.2d 524, 526 (6th Cir. 1989).[2] Following this

---

[2] Some federal courts are applying an equitable exception, but until we know whether the schedules have been amended and the added debts have been discharged, we need not consider whether it applies in this case. We note, however, the Sixth Circuit has cautioned that the exception be applied "sparingly." *Easley v. Pettibone*, 990 F.2d 905, 911 (6th Cir. 1993); *In re Smith*, 876 F.2d 524, 527 (6th Cir. 1989). In all cases where the exception has been applied, debtors were attempting to "use the stay as a shield after an unreasonable [and deliberate] delay in asserting debtors rights." *Id.* at 910 (construing *In re Calder*, 907 F.2d 953 (10th Cir. 1990); *Matthews v. Rosene*, 739 F.2d 249 (7th Cir. 1984); and *In re Smith Corset Shops*, 696 F.2d 971 (1st Cir. 1982)). The two criteria for application of the exception are (1) unreasonable withholding of notice of

rule, Lutali's writ of garnishment was in violation of the automatic stay, since she obtained it after Pedro had filed for bankruptcy and prior to the discharge in bankruptcy.

The question of whether relief from the stay is available under 11 A.S.C.A. § 362 is one for the bankruptcy court. Furthermore, amendment of the schedules and discharge of added debts are also questions for the bankruptcy court. While this court potentially has jurisdiction to determine dischargeability of debts as articulated in *In re Tinnenberg*, 57 B.R. 430, 432 (E.D.N.Y. 1985), we decline to do so without knowing whether or not the bankruptcy court has allowed amendment of the schedules to include Pedro's creditors in American Samoa and has discharged these debts. We will not speculate as to what action the bankruptcy court will take with respect to Pedro's motion to amend the schedules.

The bankruptcy court may find that the schedules cannot be amended, or that Pedro's debt to Lutali is not dischargeable. If so, quashing the writ of garnishment would prejudice Lutali's (or ASB's) interests, since Lutali (or ASB) was entitled to this remedy the day the automatic stay terminated on August 6, 1993. At that time, Lutali reasonably believed that she already had a valid writ on which she could rely to protect her interests.

On very similar facts, the bankruptcy court for the Eastern District of New York refused amendments to bankruptcy schedules.

> *Debtors did not make an appearance in state court to argue that the debt is dischargeable*, nor did debtors move to reopen their bankruptcy until after the judgment was taken. We do not condone the debtor's disregard for the state court action because *it would be unfair to impose upon [the creditor] the burden of the delay in the resolution of this matter*, and the cost of the state court litigation. In short, debtor's failure to appear in the state court action makes it beyond the sound discretion of the court to reopen this case to discharge the state court judgment.

*Tinnenberg*, 57 B.R. at 432 (emphasis added). However, we are not prepared to hold that Pedro's debts to Lutali are exempt from discharges as the state court did in *Tinnenberg*. At the time judgment was taken, Pedro had not yet filed for bankruptcy. Furthermore, Lutali has not been

---

the stay by the debtor, and (2) prejudice to the creditor.

77

prejudiced under 11 U.S.C.A. § 523(a)(3), which exempts unscheduled creditors from discharge unless they possess "notice or actual knowledge" of the proceeding to make a "timely filing" of a claim. Initially, this bankruptcy was a no-asset proceeding, in which creditors were instructed not to file claims until further notice.[3] If assets are discovered permitting a dividend, the deadline for filing claims is 90 days after the mailing of notice to creditors, meaning that the deadline to a make a "timely filing" has not yet arrived. Under these circumstances, we cannot hold Pedro's debt to Lutali exempt from discharge. 11 U.S.C.A. Rule 3002(c)(5); *In re Stark*, 717 F.2d 322, 324 (7th Cir. 1983). On the other hand, we plainly cannot hold Pedro's debt to Lutali a closed issue, unless the bankruptcy court permits amendments to the bankruptcy schedules to include Lutali and discharges this debt.

*B. Indebtedness to ASB*

The rights of ASB and Lutali differ only in that ASB is a secured creditor. The automatic stay applied to ASB as well as to Lutali. The present status of Pedro's indebtedness to both creditors remains unclear.[4] The bankruptcy court may allow amendment to schedule and then discharge these debts. If this turns out to be the bankruptcy court's decision, and the garnished funds give rise to an asset which is part of the bankruptcy estate, it will be the province of the trustee in bankruptcy to administer these funds. We therefore decline to preempt the bankruptcy court's decisions in this case by awarding the funds to either ASB or to Lutali at this juncture.

ORDER

Finding that we are unable to make a principled decision without knowing the status of the proceedings in the bankruptcy court, we take no action

---

[3] "DO NOT FILE A CLAIM AT THIS TIME. If assets are discovered that may result in payment to creditors, you will be notified of a deadline for filing claims." W.D. WA Case No. 93-03335.

[4] Pedro has submitted a letter which appears to be a legal opinion from the attorney for the bankruptcy trustee, stating the view that ASB is entitled to the funds. There is no language in that letter which purports to have any binding effect, and we are not willing to release the funds without a more official decree from the trustee or from the bankruptcy court.

either on Lutali's motion to release all or any part of the garnished funds to her or on Pedro's motion to quash Lutali's writ of garnishment at this time. Instead, we direct Pedro to advise this court within 30 days of the entry of this order on the status of his motion in the bankruptcy court to amend the bankruptcy schedules, and any resulting discharge order or other decree from either the bankruptcy court or from the trustee.

It is so ordered.